UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEIGHANN STARNES

        Plaintiff,

v.

                                 Case No. 04-71382

JLQ AUTOMOTIVE SERVICES CO.

                                 Honorable Patrick J. Duggan

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 18,2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiff brought this lawsuit against Defendant alleging gender discrimination/hostile work environment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 in relation to Plaintiff's former employment relationship with Defendant.  Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[1]  The Court conducted a hearing on Defendant's motion on June 22, 2006.

_____

[1]In its motion, Defendant also seeks sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  At the motion hearing, however, Defendant's counsel informed the Court that Defendant no longer is pursuing its request for sanctions.

1

I.      **Factual and Procedural Background**

On January 28, 2002, Plaintiff began working at Defendant's Jiffy Lube store in Royal Oak, Michigan.  Tom Nanney ("Nanney") and Conley Sills ("Sills") were Plaintiff's immediate supervisors; Nanney was the store manager and Sills was the assistant manager.  Plaintiff claims she was subjected to a hostile work environment during the course of her employment due to verbal sexual harassment by Nanney. Plaintiff claims she complained to Sills about Nanney's harassment.

In February 2003, Defendant's District Manager, Steve Matthews ("Matthews"), learned about Plaintiff's complaints of harassment through another employee.  Matthews subsequently visited Plaintiff at the Royal Oak Jiffy Lube and spoke to her about the alleged harassment.  At the end of the meeting, Matthews concluded that the best course of action would be to transfer Plaintiff to Defendant's Jiffy Lube store in Roseville, Michigan.  Defendant contends that, after meeting with Plaintiff, Matthews conducted a full investigation into Plaintiff's allegations.  Defendant, however, never took any action against Nanney.  Plaintiff began working at the Roseville Jiffy Lube but quit this position on March 17, 2003.

On March 19, 2003, Plaintiff filed a two-count complaint against Defendant in the Circuit Court for the County of Oakland, State of Michigan.  *See* Def.'s Mot. Ex. D. Plaintiff's state court action was based on her employment relationship with Defendant and alleged claims of sex discrimination/harassment and retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act.  *See id.*  Defendant subsequently filed a motion for summary disposition pursuant to Michigan Court Rules 2.116(C)(8) and (10), seeking

2

judgment in its favor as to Plaintiff's claims.  On March 26, 2003, the Honorable Rudy J. Nichols granted Defendant's motion.

As to Plaintiff's hostile work environment claim, Judge Nichols concluded that Plaintiff failed to prove "that she did not solicit or incite Nanney's alleged comments." *See* Def.'s Mot. Ex. E at 4.  Judge Nichols therefore held that Plaintiff could not establish that she was subjected to "unwelcome" sexual conduct or communication, a necessary element of her claim.  *See id.*  As to Plaintiff's retaliation claim, Judge Nichols held that Plaintiff failed to establish that she was subjected to an "adverse employment action." *See id.* at 5.  Judge Nichols therefore dismissed Plaintiff's state court complaint in its entirety.  Plaintiff thereafter filed a timely appeal.

On April 13, 2004, a few weeks after Judge Nichols dismissed Plaintiff's claims pursuant to Michigan's Civil Rights Act, Plaintiff filed her pending complaint in federal court.  Defendant subsequently filed a motion for summary judgment which this Court granted on December 3, 2004, based on the doctrine of collateral estoppel or issue preclusion.  Aware, however, that Plaintiff had appealed Judge Nichols' decision, this Court indicated in its opinion and order that if the Michigan Court of Appeals reverses the decision and, based on the appellate court's decision, it is determined that the issues presented in Plaintiff's federal complaint have not been fully decided by the State court, then Plaintiff may re-file her complaint and the Court would reinstate the action.  On December 8, 2005, the Michigan Court of Appeals issued a decision affirming in part and reversing in part Judge Nichols' order granting Defendant's motion for summary disposition.  *See* Pl.'s Resp. Ex. K [*Starnes v. JLQ Auto. Servs. Co.*, Case No. 255056

3

(Mich. Ct. App. Dec. 8, 2005)(unpublished opinion)].

In its opinion, with respect to Plaintiff's hostile work environment claim, the Michigan Court of Appeals concluded that Judge Nichols erred in finding no genuine issue of material fact with regard to whether Plaintiff was subjected to unwelcome sexual conduct or communication. *Id*. at 2. The court nevertheless affirmed Judge Nichols' dismissal of Plaintiff's sexual harassment claim, finding that Plaintiff failed to meet her burden of establishing Defendant's liability for Nanney's conduct. *Id*. at 3. Pursuant to Michigan law, an employer is not vicariously liable for a supervisor's harassing conduct. *See id*. (citing *Chambers v. Trettco*, 463 Mich. 297, 311, 614 N.W.2d 910 (2000)). "[T]o hold an employer vicariously liable for a sexually hostile work environment, a plaintiff must show that the defendant had notice of the unwelcome sexual conduct or communication and failed to take prompt and adequate remedial action." *Id*.

Relying on Plaintiff's acknowledgment during her deposition "that she did not report the alleged incidents of unwelcome sexual communication to the appropriate supervisory or management personnel," the Michigan Court of Appeals concluded that Defendant did not know for some time about Nanney's conduct. *Id*. As the court stated:

> Although plaintiff indicated that she several times complained of Nanney's sexually charged comments to the shop's assistant manager, "higher management" for purposes of notifying a defendant employer of an alleged hostile work environment is defined as "someone in the employer's chain of command who possesses the ability to exercise significant influence in the decision-making process of hiring, firing, and disciplining the offensive employee." [*Sheridan v. Forest Hills Public Schools*, 247 Mich. App. 611, 622, 637 N.W.2d 536 (2001)] It is not disputed that the assistant manager to which plaintiff complained reported directly to Nanney, and

4

> had no authority to himself discipline Nanney or otherwise
> remedy the situation.
>
> Moreover, plaintiff acknowledged that she knew to contact
> district manager Steve Matthews regarding her concerns over
> Nanney's conduct, and had in fact contacted both Matthews
> and the shop's owner, Ron Davis, to complain of hours and
> other "problems" at the shop.  Plaintiff admitted, however,
> that despite contacting these individuals to voice complaints
> regarding Nanney, she never told either of the alleged
> harassment.  Plaintiff also agreed that, by not telling these
> individuals of the harassment, she deprived them of the
> "opportunity to fix the situation."

*Id*.  The court of appeals also found that once Defendant was made aware of the

harassment, "it acted swiftly to remedy the situation . . ."  *Id*.

The appellate court concluded, however, that Judge Nichols erred in dismissing

Plaintiff's retaliation claim.  Although finding that Plaintiff's wage and title did not

change when she was transferred to Defendant's Roseville store, the court found that

Plaintiff asserted a constructive decrease in her hours and job duties as a result of the

transfer.  *Id*. at 4.  Because Defendant presented no evidence to counter Plaintiff's

assertions, the Michigan Court of Appeals concluded that the question of whether

Plaintiff's job transfer rose to the level of a material adverse employment action should be

resolved by the jury.

After the Michigan Court of Appeals issued its decision, the parties stipulated to

the reinstatement of Plaintiff's federal court complaint in its entirety.  This Court issued a

stipulated order to that effect on January 23, 2006.

**II.    Standard for Summary Judgment**

Summary judgment is appropriate only when there is no genuine issue as to any

5

material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255.  The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant."  *See id.*

III.     **Applicable Law and Analysis**

     A.     **Hostile Work Environment**

An employee asserting a violation of Title VII based upon a hostile work

6

environment must establish the following:

> (1) she was a member of a protected group, (2) she was subjected to unwelcome harassment; (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventative actions.

*Farmer v. Cleveland Public Power*, 295 F.3d 593, 604-05 (6th Cir. 2002). This last prong is modified, however, if the employee's supervisor, rather than a co-worker, conducts the harassment.  Where the employee's supervisor is the harasser, the employer's liability turns on whether the harassment results in a tangible employment action:

> If proven sexual harassment by the supervisor did not result in a tangible employment action, then the employer may not be liable if it engaged in preventative or corrective measures and the plaintiff unreasonably failed to utilize the measures the employer provided . . . If the sexual harassment did result in a tangible employment action, the employer will be strictly liable for the supervisor's sexual harassment.

*Keeton v. Flying J., Inc.*, 429 F.3d 259, 262-63 (6th Cir. 2005)(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762-63, 765, 118 S. Ct. 2257, 2269 (1998)).  The Sixth Circuit has provided that the terms "tangible employment action" and "adverse employment action" are equivalent.  *Id*. at 263 n.1.

In *Ellerth* and *Faragher*, the Supreme Court held that an employer will be strictly liable when a supervisor's unlawful harassment results in a tangible employment action against a subordinate employee, reasoning that it is "beyond question" in such a case that "more than the mere existence of the employment relation aids in commission of the

7

harassment." *Ellerth*, 524 U.S. at 760, 118 S. Ct. at 2268; accord *Faragher*, 524 U.S. at

803-05, 118 S. Ct. at 2292-93.  In other words, "[t]he tangible employment action . . . is,

in essential character, 'an official act of the enterprise, a company act' . . . It is 'the means

by which the supervisor brings the official power of the enterprise to bear on

subordinates.'"  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144, 124 S. Ct. 2342,

2353 (2004)(quoting *Ellerth*, 524 U.S. at 762, 118 S. Ct. at 2269).  In comparison, the

*Ellerth/Faragher* Court concluded that "[w]hen a supervisor's harassment of a

subordinate does not culminate in a tangible employment action . . . it is 'less obvious'

that the agency relation is the driving force."  *Id*. at 145, 124 S. Ct. at 2353 (quoting

*Ellerth*, 524 U.S. at 763, 118 S. Ct. at 2269).  The Court therefore held in *Ellerth* and

*Faragher* that strict liability should not apply in that situation, further reasoning:

> On the one hand, a supervisor's power and authority invests
> his or her harassing conduct with a particular threatening
> character, and in this sense, a supervisor always is aided by
> the agency relation. . . . On the other hand, there are acts of
> harassment a supervisor might commit which might be the
> same acts a coemployee would commit, and there may be
> some circumstances where the supervisor's status makes little
> difference.

*Ellerth*, 524 U.S. at 763, 118 S. Ct. at 2269.

Even when a tangible employment action is not taken, however, the Supreme

Court held that an employer will be vicariously liable for its supervisor's harassment

unless the employer can establish an affirmative defense comprising two necessary

elements.  *Id*. at 765, 118 S. Ct. at 2270; accord *Faragher*, 524 U.S. at 807, 118 S. Ct. at

2293.  First, that "the employer exercised reasonable care to prevent and correct promptly

any sexually harassing behavior." *Id.*  Second, that "the plaintiff employee unreasonably
failed to take advantage of any preventive or corrective opportunities provided by the
employer to avoid harm otherwise." *Id.*  The Court elaborated on these requirements as
follows:

> While proof that an employer had promulgated an
> antiharassment policy with complaint procedure is not
> necessary in every instance as a matter of law, the need for a
> stated policy suitable to the employment circumstances may
> appropriately be addressed in any case when litigating the
> first element of the defense.  And while proof that an
> employee failed to fulfill the corresponding obligation of
> reasonable care to avoid harm is not limited to showing any
> unreasonable failure to use any complaint procedure provided
> by the employer, a demonstration of such failure will
> normally suffice to satisfy the employer's burden under the
> second element of the defense.

*Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270; accord *Faragher*, 524 U.S. at 807, 118 S. Ct.
at 2293.

     In *Faragher*, the district court found that the City of Boca Raton maintained a
formal policy against sexual harassment but failed to disseminate it to employees in the
section where the plaintiff worked and that City officials made no attempt to keep track of
the conduct of its supervisors.  *Faragher*, 524 U.S. at 808, 118 S. Ct. at 2293.  The
Supreme Court held that, under these circumstances, the City could not be found to have
satisfied the first prong of its affirmative defense.  *Id.*  The Court indicated, however, that
in other situations the absence of a formal anti-harassment policy may not be
determinative:

> We hold as a matter of law that the City could not be found to
> have exercised reasonable care to prevent the supervisors'

9

> harassing conduct.  Unlike the employer of a small work
> force, who might expect that sufficient care to prevent tortious
> behavior could be exercised informally, those responsible for
> city operations could not reasonably have thought that
> precautions against hostile environments in any one of many
> departments in far-flung locations could be effective without
> communicating some formal policy against harassment, with
> a sensible complaint procedure.

*Id*. at 808-09, 118 S. Ct. at 2293.

In its motion, Defendant first contends that it is entitled to summary judgment with respect to Plaintiff's hostile work environment claim because any alleged sexually charged discussions were welcomed by and instigated by Plaintiff.  Previously this Court concluded that the doctrine of collateral estoppel or issue preclusion demanded the dismissal of Plaintiff's hostile work environment and constructive discharge claims following Judge Nichols' finding that Plaintiff failed to prove "that she did not solicit or incite Nanney's alleged comments."  Based on the same doctrine,[2] the Court believes that

---

[2]The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal district court to "give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984); *Smith, Hinchman and Grylls, Assoc. v. Tassic*, 990 F.2d 256, 257 (6th Cir. 1993); *see also* U.S. CONST. ART. IV, § 1.  Under Michigan law, three elements must be satisfied for the doctrine of collateral estoppel or issue preclusion to apply:

> (1) "a question of fact essential to the judgment must have
> been actually litigated and determined by a valid and final
> judgment"; (2) "the same parties must have had a full [and
> fair] opportunity to litigate the issue"; and (3) "there must be
> mutuality of estoppel."

*Monat v. State Farm Ins. Co.*, 469 Mich. 679, 683-84, 677 N.W.2d 843, 845-46 (2004)(quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 171 n.3 (1988)). As the Michigan Supreme Court explained the third element:

it now is bound to accept the Michigan Court of Appeals' determination that there in fact are genuine issues of material fact regarding whether Plaintiff welcomed and instigated Nanney's conduct.[3]

The same is not true, however, with respect to the Michigan Court of Appeals' conclusion that Plaintiff failed to establish Defendant's liability for Nanney's conduct. As the Michigan Court of Appeals explained in its opinion, under Michigan law, an employer only is vicariously liable for a supervisor's harassment if the defendant had notice of the unwelcome sexual conduct or communication and failed to take prompt and adequate remedial action.  In Title VII cases, in comparison, where a supervisor's harassment does not result in a tangible employment action– which this Court will presume is the case here– the employer is liable unless it proves that it (1) ". . . exercised reasonable care *to prevent and* correct promptly any sexually harassing behavior" and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or

––––––––––––––––––––

> "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action.  In other words, 'the estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.'"

*Monat*, 469 Mich. at 684, 677 N.W.2d at 846 (quoting *Lichon v. Am. Universal Ins. Co.*, 435 Mich. 408, 427, 459 N.W.2d 288, 297-98 (1990)). In this case, all three requirements are satisfied.

[3]But even if the Court were not bound to accept the Michigan Court of Appeals' ruling that a genuine issue of fact exists, this Court finds, based on the record, that an issue of fact exists.

11

corrective opportunities provided by the employer to avoid harm otherwise." *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270 (emphasis added). The differences in these standards mean that Plaintiff is not collaterally estopped from establishing Defendant's liability for Nanney's conduct based on the Michigan Court of Appeals' decision.

The Michigan Court of Appeals found that Plaintiff failed to put Defendant on notice of the unwelcome sexual conduct or communication and, that when Defendant did discover the harassment, it "acted swiftly to remedy the situation." The court, however, did not make a determination with regard to whether Defendant exercised reasonable care to *prevent* sexual harassment in its workplace. The Supreme Court's discussion regarding this latter requirement in *Faragher* leads this Court to conclude that an employer is not relieved of its obligation to exercise reasonable care to prevent harassment simply because it can prove that it promptly corrected any sexually harassing behavior. As the *Faragher* Court made clear, imposing this obligation on employers serves to avoid harassment in the first place, which is one of Title VII's primary goals:

> Although Title VII seeks "to make persons whole for injuries suffered on account of unlawful employment discrimination," . . . its "primary objective," like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm . . . As long ago as 1980, the EEOC, charged with the enforcement of Title VII, 42 U.S.C. § 2000e-4, adopted regulations advising employers to "take all steps necessary to prevent sexual harassment from occurring, such as . . . informing employees of their right to raise and how to raise the issue of harassment." 29 C.F.R. § 1604.11(f) (1997), and in 1990 the EEOC issued a policy statement enjoining employers to establish a complaint procedure "designed to encourage victims of harassment to come forward without requiring a victim to complain first to the offending supervisor." EEOC Policy Guidance on Sexual Harassment,

>8 FEP Manual 405:6699 (Mar. 19, 1990) . . . It would
>therefore implement clear statutory policy and complement
>the Government's Title VII enforcement efforts to recognize
>the employer's affirmative obligation to prevent violations
>and give credit here to employers who make reasonable
>efforts to discharge their duty.

524 U.S. at 805-06, 118 S. Ct. at 2292 (internal citations omitted).  For the following

reasons, this Court finds a genuine issue of material fact with respect to whether

Defendant "exercised reasonable care to prevent . . . sexually harassing behavior" in its

workplace.

First, Defendant admits that it maintains no formal, written anti-harassment policy.

While Defendant claims that it has an oral policy, it has provided the Court with no

specifics regarding the alleged policy.  As the *Faragher* Court expressed, the type  of

anti-harassment policy an employer needs to satisfy the first prong of its affirmative

defense depends on the size of the employer's work force and its operations.  *See*

*Faragher*, 524 U.S. at 808-09, 118 S. Ct. at 2293.  The Court  held that an employer with

a large work force "c[an] not reasonably have thought that precautions against hostile

environments in any one of many departments in far-flung locations could be effective

without communicating some formal policy against harassment, with a sensible complaint

procedure."  *Id.*  Defendant apparently has a large workforce, spread among many stores

in a vast geographic area.

Second, while Defendant asserts that Plaintiff knew she could contact its regional

manager or owner regarding the alleged harassment,  Plaintiff's awareness of Defendant's

"open door" policy does not demonstrate that Defendant took any measures to prevent

13

sexual harassment per se.  Finally, if the trier of fact concludes that Nanney sexually harassed Plaintiff, it also could conclude, based on Defendant's handling of Plaintiff's complaints, that Defendant's alleged anti-harassment policy is inadequate to prevent harassment.  After Plaintiff complained of Nanney's harassment, Matthews decided, before investigating her allegations, to transfer Plaintiff to another store.  Such a response hardly encourages other victims to report sexual harassment in the workplace.  Moreover, Matthews left Nanney– the alleged harasser– in his position, supervising the Royal Oak store.  Defendant has not suggested that it disciplined Nanney or that it required him to undergo  anti-harassment education or training.  Clearly Defendant stopped Nanney's alleged harassment of Plaintiff by transferring her from the store Nanney managed.  However, the jury reasonably could conclude that Defendant's response in no way prevents or discourages Nanney or other employees from engaging in sexual harassment in the future.

The Court therefore concludes that Defendant is not entitled to summary judgment with respect to Plaintiff's Title VII sexual harassment claim.

**B.      Retaliation**

To establish a claim of retaliation under Title VII, a plaintiff must prove that (1) she engaged in protected activity; (2) the exercise of that protected right was known to the defendant; (3) the defendant thereafter took an employment action adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action.  *Akers v. Alvey*, 388 F.3d 491, 497 (6th Cir. 2003).  Defendant contends that Plaintiff's retaliation claim fails because she cannot establish that it took an

14

adverse employment action against her.[4]

This Court originally dismissed Plaintiff's retaliation claim based on Judge

Nichols' finding that she failed to establish an adverse employment action. The Michigan

Court of Appeals, however, found a genuine issue of material fact with respect to this

issue because Plaintiff asserted that, as a result of the transfer, she experienced the

following adverse changes to the conditions of her employment:

> (1) she lost seniority, which resulted in her being the first
> person sent home when the store was overstaffed, thereby
> decreasing her net pay; (2) her commute was actually longer
> and more difficult; (3) the new store was significantly dirtier;
> (4) she felt isolated and not welcomed by the new store's
> employees, who were aware of her allegations against
> Nanney; and (5) even if there was no corresponding change in
> her job title, her job duties were limited to log-ins, whereas
> before she performed every task in the store, thus resulting in
> a significant decrease in responsibility.

See Resp. Ex. K at 4. Even if this Court were not bound by the Michigan Court of

Appeals' determination– which it believes it is– it agrees with the state court that a

genuine issue of material fact exists as to whether Plaintiff suffered an adverse

employment action as a result of her transfer at least based on her assertion that she

suffered a decreased salary due to reduced hours and a longer and more difficult

---

[4]Defendant also states in its brief that Plaintiff, by her own admission, did not engage in protected activity. *See* Mot. at 22. The evidence Defendant cites does not support this assertion and clearly Plaintiff alleges in her complaint that she engaged in protected activity when she complained about Nanney's harassment. *See* Def.'s Mot. Ex. F ¶ 54 [Complaint]; *see also* Ex. A [Starnes' dep.] at 166:10-16. In the portion of her deposition testimony Defendant cites, *see id*. Ex. A. at 166:10-18, Plaintiff did not state that she suffered no retaliation; she merely stated that Bob Happy, the manager of Defendant's Roseville store, did not retaliate against her after her transfer.

commute.[5]  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)(providing that reassignment resulting in diminishment of the plaintiff's salary or work hours constitutes an adverse employment decision); *Keeton*, 429 F.3d at 264-65 (concluding that increased distance commuting to work is an appropriate factor for the jury to consider to determine whether the plaintiff suffered an adverse employment action).

Moreover, the Court notes that while Defendant's motion for summary judgment was pending, the Supreme Court issued its decision in *Burlington Norther & Santa Fe Railway Co. v. White*, in which the Court defined the harm a plaintiff must demonstrate to support a retaliation claim.  – U.S. – , 126 S. Ct. 2405 (2006).  Rather than requiring proof of specific prohibited acts (i.e., firing, demotion, decrease in salary), the Court held that a plaintiff alleging retaliation "must show that a reasonable employee would have found the challenged conduct materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (internal quotation marks and citations omitted).

**C.     Constructive Discharge**

To evaluate a plaintiff's claim alleging a constructive discharge under Title VII,

---

[5]In its motion, Defendant also argues that Plaintiff has not suffered any damages.  *See* Def.'s Mot. at 24.  Defendant contends that "if Plaintiff has any damages at all, they were brought on by herself: she voluntarily quit Defendant's employ, she regularly instigated and participated in  sexually charged discussions at work, and she failed to mitigate her damages after she quit." *See id*.  In light of the Michigan Court of Appeals' decision finding a genuine issue of material fact with regard to whether Plaintiff suffered an adverse action as a result of her transfer and this Court's conclusion, *see infra*, that Defendant has failed to show that it is entitled to summary judgment with respect to Plaintiff's constructive discharge claim, the Court cannot conclude at this juncture that Plaintiff suffered no damages.

"requires an inquiry into both the objective feelings of an employee, and the intent of the employer. A constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002)(quoting *Yates v. Arco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987)). "A plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee." *Id*. Based on Judge Nichols' finding that Plaintiff was not subjected to unwelcome sexual communication or conduct, this Court previously concluded that Plaintiff could not establish that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign. However as discussed above, the Michigan Court of Appeals disagreed with Judge Nichols' decision, finding a genuine issue of material fact with respect to whether Plaintiff welcomed and/or instigated Nanney's conduct. Defendant does not set forth any other reason why this Court should grant summary judgment in its favor with respect to Plaintiff's constructive discharge claim.

### D.     After-Acquired Evidence

Defendant argues that Plaintiff's admission that she engaged in unlawful conduct in the workplace– i.e. using marijuana– limits her recovery. The "after-acquired evidence" defense doctrine provides that "[w]here an employer can show it would have been entitled to terminate the employee for severe wrongdoing, if it had known of the employee's wrongdoing at the time, the employee's remedies for discrimination are limited." *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996)(citing

*McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360-62, 115 S. Ct. 879, 886-87 (1995)). This defense, however, does not bar all of the employee's remedies. Instead, as a general rule, it bars the employee "from obtaining front pay and reinstatement, and back-pay is limited." *Id.* (citing *McKennon*, 513 U.S. at 361-62, 115 S. Ct. at 886).

Defendant claims that it would have terminated Plaintiff if it had discovered her marijuana use while she still was employed. Plaintiff, however, presents sufficient evidence to create a genuine issue of material fact with regard to whether Defendant in fact would terminate an employee for this wrongdoing. Specifically, Plaintiff points to the deposition testimony of the Royal Oak store's assistant manager, Sills, where Sills indicated that he and other employees at the Royal Oak Jiffy Lube store used marijuana at work and that Nanney was aware of their use. *See* Resp. Ex. B at 42. According to Sills, Nanney actually provided marijuana to his employees and told Sills "that if he fired all of the employees who smoked marijuana at Jiffy Lube that he would have no more employees." *See id.* Plaintiff also notes the deposition testimony of Matthews, Defendant's District Manager, where Matthews states that he knew Sills used marijuana at work. *See* Resp. Ex. H at 89-90. According to Matthews, the only action he took against Sills for this violation was "talk[ing] to him about it." *Id.* at 91. The Court therefore cannot find that Defendant is entitled to the after-acquired doctrine defense.

## IV.   Conclusion

For the above reasons, the Court finds that Defendant is not entitled to summary judgment with respect to any of Plaintiff's claims. While the Michigan Court of Appeals dismissed Plaintiff's hostile work environment claim, holding that Defendant is not

vicariously liable for Nanney's conduct pursuant to Michigan law, different standards apply for determining Defendant's liability under Title VII. As set forth previously, unlike the standard applied under Michigan law, an employer is liable for a supervisor's conduct under Title VII unless the harassment did not result in a tangible employment action and the employer can demonstrate an affirmative defense. As set forth previously, the Court finds a genuine issue of material fact with regard to whether Defendant can establish its affirmative defense– specifically, whether Defendant exercised reasonable care to prevent sexual harassment in its workplace. Based on the Michigan Court of Appeals' decision– and because this Court agrees that there are genuine issues of material fact as to whether Plaintiff was subjected to unwelcome sexual conduct or communications and as to whether Plaintiff suffered an adverse employment action– the Court concludes that Defendant is not entitled to summary judgment with respect to Plaintiff's retaliation and constructive discharge claims. The Court also finds that Defendant has not established an absence of a genuine issue of material fact with respect to its after-acquired defense.

Accordingly,

**IT IS ORDERED**, that Defendant's motion for summary judgment is **DENIED**.


s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
James F. Roll, Esq.
Kenneth J. Hardin II, Esq.

19